# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ ) | | |
| Mordchai Krausz, on behalf of ING ) | No. _____ | |
| Principal Protection Fund VI, ) | | |
| Wayne Soojian and Janet Delgaizo, on ) | | |
| behalf of ING Principal Protection ) | | |
| Fund VII, and The Henzel Family ) | | |
| Foundation, on behalf of ING Principal ) | | |
| Protection Fund III, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| ING Investments, LLC and ING ) | | |
| Investment Management Co., ) | | |
| ) | | |
| Defendants, ) | | |
| ) | | |
| and ) | | |
| ) | | |
| ING Principal Protection Fund III, ) | | |
| ING Principal Protection Fund VI and ) | | |
| ING Principal Protection Fund VII, ) | | |
| ) | | |
| Nominal Defendants ) | | |
| _____ ) | | |

## COMPLAINT

Plaintiffs, through their attorneys, allege upon information and belief, except as to the allegations which pertain to the plaintiffs and their counsel, which are alleged upon personal knowledge. Plaintiffs' information and belief are based, *inter alia*, on the investigation made by their attorneys.

## INTRODUCTION

This is an action brought by the Plaintiffs against the Defendants ING Investments, LLC and ING Investment Management Co., on behalf of ING Principal Protection Fund III ("Fund III"), ING Principal Protection Fund VI ("Fund VI") and ING Principal Protection Fund VII ("Fund VII"), collectively referred to herein as the "Funds", for breach by the Defendants of their fiduciary duty to the Funds and the Funds' shareholders in violation of Section 36(b) of the Investment Company Act of 1940 (the "Investment Company Act"), 15 U.S.C. §80a-35(b). The Plaintiffs allege that the Defendants breached and continue to breach their fiduciary duties to the Funds and their shareholders and violated and continue to violate Section 36(b) of the Investment Company Act, by charging and receiving from the Funds both advisory and sub-advisory fees that are excessive. Plaintiffs seek recovery for the Funds, from the Defendants, the excessive advisory and sub-advisory fees paid by the Funds to the Defendants.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Action pursuant to Section 44 of the Investment Company Act.

2.      This Action arises under and is brought  pursuant to Section 36(b) of the Investment Company Act.

3.      Venue is proper in this district pursuant to Section 44 of the Investment Company Act and 28 U.S.C. §1391(b), because the Funds are organized pursuant to Massachusetts law and because the Defendants transact business in this district and many of the acts complained of herein occurred in substantial part in this district.

4.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the mails and the interstate telephonic voice and data communications.

## PARTIES

5.      The Plaintiff The Henzel Family Foundation ("Henzel"), purchased shares of Fund III during the Offering Period for Fund III and has held those shares continuously to the present.

6.      The Plaintiff Mordchai Krausz ("Krausz"), purchased shares of Fund VI during the Offering Period for Fund VI and has held those shares continuously to the present.

7.      The Plaintiffs Wayne Soojian ("Soojian") and Janet Delgaizo ("Delgaizo"), purchased shares of Fund VII during the Offering Period for Fund VII and have held those shares continuously to the present.

8.      The Defendant, ING Investments, LLC ("ING Investments"), formerly known as ING Pilgrim Investments, LLC, is an Arizona limited liability company.  It is an "investment advisor" to the Funds, as that term is defined in Section 2(a)(20) of the Investment Company Act, and as that term is used in Section 36(b) of the Investment Company Act. ING Investments is an indirect wholly-owned subsidiary of ING Groep N.V. ("ING Group").  It is an "affiliated company" and an "affiliated person" of the Defendant ING Investment Management Co., as those terms are defined in Sections 2(a)(2) and 2(a)(3)(C) of the Investment Company Act.  It is an affiliated person of that Defendant as that term is used in Section 36(b) of the Investment Company Act.

9.      The Defendant ING Investment Management Co., which was formerly known as Aeltus Investment Management, Inc. ("Aeltus"), is a corporation organized under the laws of the State of Connecticut.  Aeltus has its principal place of business in Connecticut.

It is an "investment advisor" to the Funds, as that term is defined in Section 2(a)(20) of the Investment Company Act, and as that term is used in Section 36(b) of the Investment Company Act.   Aeltus is an indirect wholly-owned subsidiary of ING Group.   It is an "affiliated company" and an "affiliated person" of the Defendant ING Investments as those terms are defined in Sections 2(a)(2) and 2(a)(3)(C) of the Investment Company Act.  It is an affiliated person of that Defendant as that term is used in Section 36(b) of the Investment Company Act.

10.     The Defendants ING Investments and Aeltus are collectively referred to herein as the "Defendants."

11.     The Nominal Defendants, Fund III, Fund VI and Fund VII, are part of the ING Equity Trust, which is an open - end investment management company registered under the Investment Company Act.  The Trust is a Massachusetts business trust with at least 20 separate funds including Fund III, Fund VI and Fund VII.

### FACTS REGARDING THE FUNDS

12.     The Funds are part of a series of virtually identical registered open-end investment management companies which have been formed by the Defendants and their affiliates.  Those other funds are entitled the ING Principal Protection Fund ("Fund I"), ING Principal Protection Fund II ("Fund II"), ING Principal Protection Fund IV ("Fund IV"), ING Principal Protection Fund V ("Fund V"), ING Principal Protection Fund VIII ("Fund VIII"), ING Principal Protection Fund IX ("Fund IX"), ING Principal Protection Fund X ("Fund X"), ING Principal Protection Fund XI ("Fund XI") and ING Principal Protection Fund XII ("Fund XII").  They are collectively referred to herein as the "Other PP Funds."  All of the Other PP Funds are part of the ING Equity Trust.

13.     The business and affairs of the ING Equity Trust and of the Funds are purportedly managed under the direction of the ING Equity Trust Board of Trustees.

14.     All of the trustees of the ING Equity Trust are sometimes collectively referred to herein as the "Trustees" or the "Board of Trustees."

15.     For all purposes under the Investment Company Act, the Board of Trustees of the ING Equity Trust constitute the "board of directors" of the ING Equity Trust and the Funds as the term "board of directors" is used in the Investment Company Act.

16.     For all purposes under the Investment Company Act, the Trustees are the "directors" of the ING Equity Trust and the Funds as the term "directors" is used in the Investment Company Act.

17.     The Trustees are also the directors or trustees of all of the Other PP Funds.

18.     The Trustees are the directors or trustees of numerous trusts which are part of the ING mutual fund complex, whose trusts have more than 100 portfolios.

**Fund III**

19.     Shares in Fund III were offered for sale to the public pursuant to a prospectus dated March 1, 2002 (the "Fund III Prospectus").  Under the terms of the offering, investors could purchase shares in Fund III only during the time period from March 1, 2002 through May 30, 2002, which time period was referred to in the prospectus as the "Offering Phase."

20.     The period from June 6, 2002 through June 5, 2007, is defined in the Fund III Prospectus as the "Guarantee Period."  During the Guarantee Period, no additional shares of Fund III have been or will be sold either to the general public or to the existing shareholders of Fund III, except for the reinvestment into Fund III of dividends received from Fund III by current shareholders.

21.     The Fund III Prospectus defines the period after June 5, 2007 as the "Index Plus LargeCap Period."  During the Index Plus LargeCap Period, shares of the Fund will be offered, on a continuing basis, only to existing shareholders of the Fund.

## Fund VI

22.     Shares in Fund VI were offered for sale to the public pursuant to a prospectus dated January 10, 2003 (the "Fund VI Prospectus").  Similar to Fund III, under the terms of the Fund VI offering, investors could purchase shares in Fund VI only during an "Offering Period," which ran from February 3, 2003 through March 14, 2003.

23.     The Fund VI Prospectus defined the Guarantee Period as the period from April 24, 2003 through April 22, 2008.  During the Fund VI Guarantee Period, no additional shares of Fund VI have been or will be sold either to the general public or to the existing shareholders of Fund VI, except for the reinvestment into Fund VI of dividends received from Fund VI by current shareholders.

24.     The Fund VI Prospectus defines the period after April 22, 2008 as the "Index Plus LargeCap Period."  During the Fund VI Index Plus LargeCap Period, shares of Fund VI will be offered, on a continuing basis, only to existing shareholders of Fund VI.

## Fund VII

25.     Shares in Fund VII were offered for sale to the public pursuant to a prospectus dated April 15, 2003 and a Supplement dated April 22, 2003 (the "Fund VII Prospectus").  Similar to Funds III and VI, under the terms of the Fund VII offering, investors could purchase shares in Fund VII only during an "Offering Period," which ran from May 1, 2003 through July 10, 2003.

26.     The Fund VII Prospectus defined the Guarantee Period as the period from July 17, 2003 through July 15, 2008.  During the Fund VII Guarantee Period, no additional

shares of Fund VII have been or will be sold either to the general public or to the existing shareholders of Fund VII, except for the reinvestment into Fund VII of dividends received from Fund VII by current shareholders.

27.    The Fund VII Prospectus defines the period after July 15, 2008 as the "Index Plus LargeCap Period."  During the Fund VII Index Plus LargeCap Period, shares of Fund VII will be offered, on a continuing basis, only to existing shareholders of Fund VII.

## SUBSTANTIVE ALLEGATIONS

### The Excessive Advisory Fees

28.    Sec. 15(a) of the Investment Company Act provides that any contract to serve as an investment advisor of a registered investment company must:

a.    specify precisely all compensation to be paid thereunder;

b.    provide that it is terminable, without cause and without penalty, on no more than sixty days notice, by the investment company's board of directors;

c.    provide that it may continue in effect for more than two years only if its continuance is specifically approved annually by a vote of the board of directors of the investment company.

29.    Each of the Funds has advisory and sub-advisory contracts with the Defendants ING Investments and Aeltus which contain the provisions described in the preceding paragraph (the "Investment Advisory Contracts").

30.    Defendant ING Investments, as the investment advisor for the Funds, has overall and ultimate responsibility for the management of the Funds' investments, pursuant to the investment criteria set forth in the Fund III, Fund VI and Fund VII Prospectuses. Defendant Aeltus, as the investment sub-advisor for the Funds, has the operating

responsibility for the management of the Funds' investments, pursuant to the investment criteria set forth in the Fund III, Fund VI and Fund VII Prospectuses.

31.    The Fund III Prospectus describes, at pages 2, 3 and 15, investment criteria for Fund III, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as Fund III's investment advisor and sub-advisor, respectively. Page 15 also sets forth the advisory and sub-advisory fees to be paid by Fund III to the Defendants, ING Investments and Aeltus.   A copy of those pages of the Fund III Prospectus are attached hereto as Exhibit A, and are incorporated herein by reference.

32.    As reflected in Exhibit A, the assets of Fund III are allocated, based upon criteria described therein, into two components, the Equity Component and the Fixed Component.

33.    Since the commencement of the Guarantee Period, the Defendant ING Investments has been paid an advisory fee by Fund III of 0.80% of the Net Asset Value of Fund III, each year, in payment for the advisory services described above and in Exhibit A. That 0.80% advisory fee is paid on all of the Net Asset Value of Fund III, without regard to whether those assets are invested in the Equity Component or the Fixed Component.

34.    From the commencement of the Guarantee Period through January 1, 2004, the Defendant Aeltus was paid a sub-advisory fee of 0.40% of the Net Asset Value of Fund III, each year, in payment for the sub-advisory services described above and in Exhibit A. Since January 2, 2004, Aeltus has been paid a sub-advisory fee of 0.36% of the Net Asset Value of Fund III, each year, in payment for the sub-advisory services described above and in Exhibit A.   Aeltus' sub-advisory fee has been paid by ING Investments, out of the advisory fee paid to ING Investments by Fund III.   That sub-advisory fee is paid on all of

the Net Asset Value of Fund III, without regard to whether those assets are invested in the Equity Component or the Fixed Component.

35.     The Fund VI Prospectus describes, at pages 2, 3, 4 and 16, the investment criteria for Fund VI, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as Fund VI's investment advisor and sub-advisor, respectively. Page 16 also sets forth the advisory and sub-advisory fees to be paid by Fund VI to the Defendants, ING Investments and Aeltus.   A copy of those pages of the Fund VI Prospectus are attached hereto as Exhibit B, and are incorporated herein by reference.

36.     As reflected in Exhibit B, the assets of Fund VI are allocated, based upon criteria described therein, into two components, the Equity Component and the Fixed Component.

37.     Since the commencement of the Guarantee Period, the Defendant ING Investments has been paid an advisory fee by Fund VI of 0.80% of the Net Asset Value of Fund VI, each year, in payment for the advisory services described above and in Exhibit B. That 0.80% advisory fee is paid on all of the Net Asset Value of Fund VI, without regard to whether those assets are invested in the Equity Component or the Fixed Component.

38.     From the commencement of the Guarantee Period, through January 1, 2004, the Defendant Aeltus was paid a sub-advisory fee of 0.40% of the Net Asset Value of Fund VI, each year, in payment for the sub-advisory services described above and in Exhibit B. Since January 2, 2004, Aeltus has been paid a sub-advisory fee of 0.36% of the Net Asset Value of Fund VI, each year, in payment for the sub-advisory services described above and in Exhibit B.   Aeltus' sub-advisory fee has been paid by ING Investments, out of the advisory fee paid to ING Investments by Fund VI.   That sub-advisory fee is paid on all of

the Net Asset Value of Fund VI, without regard to whether those assets are invested in the Equity Component or the Fixed Component.

39.     The Fund VII Prospectus describes, at pages 2, 3, 4, 5 and 17, the investment criteria for Fund VII, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as Fund VII's investment advisor and sub-advisor, respectively.   Page 17 also sets forth the advisory and sub-advisory fees to be paid by Fund VII to the Defendants, ING Investments and Aeltus.   A copy of those pages of the Fund VII Prospectus are attached hereto as Exhibit C, and are incorporated herein by reference.

40.     As reflected in Exhibit C, the assets of Fund VII are allocated, based upon criteria described therein, into two components, the Equity Component and the Fixed Component.

41.     Since the commencement of the Guarantee Period, the Defendant ING Investments has been paid an advisory fee by Fund VII of 0.80% of the Net Asset Value of Fund VII, each year, in payment for the advisory services described above and in Exhibit C.  That 0.80% advisory fee is paid on all of the Net Asset Value of Fund VII, without regard to whether those assets are invested in the Equity Component or the Fixed Component.

42.     Since the commencement of the Guarantee Period, the Defendant Aeltus has been paid a sub-advisory fee of 0.36% of the Net Asset Value of Fund VII, each year, in payment for the sub-advisory services described above and in Exhibit C.   Aeltus' sub-advisory fee has been paid by ING Investments, out of the advisory fee paid to ING Investments by Fund VII.  That 0.36% sub-advisory fee is paid on all of the Net Asset Value of Fund VII, without regard to whether those assets are invested in the Equity Component or the Fixed Component.

43.      A supplement dated July 22, 2003, was issued to the Fund III Prospectus, the Fund VI Prospectus and the Fund VII Prospectus (the "Supplement").   A copy of the Supplement is attached hereto as Exhibit D and incorporated herein by reference.   The Supplement provides that under specified circumstances, the Equity Component of the Funds' investments (and the investments of the Other PP Funds) could be invested in exchange traded funds ("ETFs"), which are passively managed investment companies traded on a securities exchange whose goal is to track or replicate a desired index.   The Supplement did not disclose any change in any investment advisory fees paid by the Funds to the Defendants, ING Investments and Aeltus.   Accordingly, the Funds will pay the Defendant, ING Investments, 0.80% of the net asset value of the assets of each of the Funds invested in the ETFs and Aeltus will be paid a sub-advisory fee of 0.36% of the net asset value of each of the Funds' assets invested in the ETFs.

44.      The Prospectus for Fund VIII (the "Fund VIII Prospectus") describes, at pages 2, 3 and 17, investment criteria for Fund VIII, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as Fund VIII's investment advisor and sub-advisor, respectively.   Page 17 also sets forth the advisory and sub-advisory fees to be paid by Fund VIII, to the Defendants, ING Investments and Aeltus.   A copy of those pages of the Fund VIII Prospectus are attached hereto as Exhibit E, and are incorporated herein by reference.

45.      The Prospectus for Fund IX (the "Fund IX Prospectus") describes, at pages 2, 3 and 17, investment criteria for Fund IX, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as Fund IX's investment advisor and sub-advisor, respectively.  Page 17 also sets forth the advisory fees to be paid by Fund IX to the Defendant, ING Investments.   A copy of those pages of the Fund IX

Prospectus and a page from Fund IX's Statement of Additional Information ("SAI") are attached hereto as Exhibit F, and are incorporated herein by reference.

46.     The Prospectus for Fund X (the "Fund X Prospectus") describes, at pages 2, 3 and 18, investment criteria for Fund X, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as Fund X's investment advisor and sub-advisor, respectively.   Page 18 also sets forth the advisory and sub-advisory fees to be paid by Fund X, to the Defendants, ING Investments and Aeltus.   A copy of those pages of the Fund X Prospectus and a copy of a page from the Fund X SAI are attached hereto as Exhibit G, and are incorporated herein by reference.

47.     The Prospectus for Fund XI (the "Fund XI Prospectus") describes, at pages 2, 3, 4, 5 and 20, investment criteria for Fund XI, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as Fund XI's investment advisor and sub-advisor, respectively.   Page 20 also sets forth the advisory and sub-advisory fees to be paid by Fund XI, to the Defendants, ING Investments and Aeltus.   A copy of those pages of the Fund XI Prospectus and a copy of a page from the Fund XI SAI are attached hereto as Exhibit H, and are incorporated herein by reference.

48.     The Prospectus for Fund XII (the "Fund XII Prospectus"), at pages 2, 3, 4, 5 and 20, describes investment criteria for Fund XII, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as Fund XII's investment advisor and sub-advisor, respectively.   Page 20 also sets forth the advisory and sub-advisory fees to be paid by Fund XII, to the Defendants, ING Investments and Aeltus.   A copy of those pages of the Fund XII Prospectus and a copy of a page from the Fund XII SAI are attached hereto as Exhibit I, and are incorporated herein by reference.

49.     Fund III, Fund VI and Fund VII, as well as the Other PP Funds, have numerous common characteristics, and no material differences, in the way they are organized, marketed and in the way their assets are managed and invested.  Some of those common characteristics are:

a.      They are all part of the ING Equity Trust, which is an open-end investment management company registered under the Investment Company Act.  The ING Equity Trust is a Massachusetts business trust with at least 20 separate funds, four of which are the Funds and eight of which are the Other PP Funds.

b.      Their shares were sold to the public only during limited time periods, called the Offering Phase or Offering Period.  Thereafter there is a Guarantee Period of five years.  During the Guarantee Period no shares will be sold to either the public or current shareholders, except for the reinvestment of dividends by current shareholders.  Thereafter there will be an Index Plus LargeCap Period, during which shares will be offered, on a continuing basis, only to existing shareholders.

c.      The investment criteria and asset allocation during each of the defined time periods – the Offering Phase, the Guarantee Period and the Index Plus LargeCap Period – are identical or virtually identical.

d.      The Defendant ING Investments is the investment advisor for all of the Other PP Funds and its duties and responsibilities as investment advisor is identical for the Funds and for all of the Other PP Funds.

e.    The Defendant Aeltus is the investment sub-advisor for all of the Other PP Funds and its duties and responsibilities as investment sub-advisor is identical for the Funds and for all of the Other PP Funds.

f.    The same individual, Mary Ann Fernandez, Senior Vice President of Aeltus, since the formation of each of the Funds and each of the other PP Funds, has been responsible for overseeing the overall Fund strategy and the allocation of Fund assets between the Equity and Fixed Components for each of the Funds and all of the Other PP Funds.

g.    The same individual, Douglas E. Cote, Portfolio Manager at Aeltus, since the formation of each of the Funds and each of the other PP Funds, has managed the Equity Component of the investments of the Funds and the Equity Component of the investments of all of the Other PP Funds.

h.    The same individuals at Aeltus, since the formation of each of the Funds and each of the other PP Funds, have managed the Fixed Components for each of the Funds and all of the other PP Funds.

50.    As reflected in Exhibits E, F, G, H and I, the Defendant ING Investments has been paid and will be paid an annual investment advisory fee of 0.80% of net asset value of Funds VIII, IX, X, XI and XII investments in the Equity Component of the asset allocation, but ING Investments has been paid and will be paid an annual investment advisory fee of only 0.55% of the net asset value of the investments of Funds VIII, IX, X, XI and XII in the Fixed and ETF Components.  This is 0.25% of the Net Asset Value of the investments in the Fixed Component and the ETF Component less than the 0.80% investment advisory fee which ING Investments has charged and continues to charge Fund III, Fund VI and Fund VII for their investments in their Fixed and ETF Components.

51.    As reflected in Exhibits A through I, the duties and responsibilities of the Defendant ING Investments, as investment advisor for Fund III, Fund VI, Fund VII, Fund VIII, Fund IX, Fund X, Fund XI and Fund XII, (which have virtually identical investment criteria and parameters) are identical.  Nevertheless, the Defendant ING Investments has charged, and continues to charge, Fund III, Fund VI and Fund VII, 0.25% more of the net asset value of the Funds' investments in their Fixed and ETF Components than it has charged and will charge Funds VIII, IX, X, XI and XII, for identical investment advisory services.

52.    Those facts demonstrate that the investment advisory fees received by Defendant ING Investments from Fund III, Fund VI and Fund VII, and received after the filing of this Action, are excessive because:

a.    The nature and quality of the advisory services provided by ING Investments to Fund III, Fund VI and Fund VII are identical to the nature and quality of the advisory services provided by ING Investments to Funds VIII, IX, X, XI and XII, which pay ING Investments substantially lower advisory fees for those identical services;

b.    ING Investments' profitability under its advisory agreements with Fund III, Fund VI and Fund VII is substantially greater than its profitability under its advisory agreements with Funds VIII, IX, X, XI and XII, since it performs identical services to all of those funds, but is paid substantially greater advisory fees by Fund III, Fund VI and Fund VII;

c.    The comparative advisory fee structures between Fund III, Fund VI and Fund VII on the one hand and Funds VIII, IX, X, XI and XII, on the

other, demonstrate the excessiveness of the advisory fees being paid by Fund III, Fund VI and Fund VII.

d.      The fallout benefits, i.e. indirect profits to ING Investments attributable in some way to the existence of the Funds, would be identical to the fallout benefits attributable to the existence of Funds VIII, IX, X, XI and XII.

e.      The Trustees have not functioned in either an independent or conscientious manner in their approval of all of the fees at issue herein.

53.     As the investment advisor to the Funds, the Defendant ING Investments has a fiduciary duty to the Funds and their shareholders.

54.     By collecting excessive investment advisory fees from the Funds, Defendant ING Investments breached its fiduciary duty to the Funds and their shareholders and violated Sec. 36(b) of the Investment Company Act.

55.     By continuing to collect excessive investment management fees from the Funds after the filing of this Complaint, Defendant ING Investments continues to breach its fiduciary duty to the Funds and their shareholders and violate Sec. 36(b) of the Investment Company Act.

### The Excessive Sub-Advisory Fees

56.     As reflected in Exhibits E, F, G, H and I, the Defendant Aeltus has been and is being paid an annual investment sub-advisory fee of 0.2475% of the net asset value of investments of Funds VIII, IX, X, XI and XII in the Fixed Component.  This is 0.1525% less than the investment sub-advisory fee which Aeltus receives as investment sub-advisor of Fund III, Fund VI and Fund VII for the Funds' Fixed Component investments.

57.     As reflected in Exhibits A through I, the duties and responsibilities of the Defendant Aeltus, as investment sub-advisor for Fund III, Fund VI and Fund VII and Funds VIII, IX, X, XI and XII (all of which have virtually identical investment criteria and parameters) are identical.  Nevertheless, the Defendant Aeltus has received, and continues to receive, greater sub-advisory fees for Fund III, Fund VI and Fund VII than it has been and will be paid for identical investment sub-advisory services to Funds VIII, IX, X, XI and XII.

58.     Those facts demonstrate that the investment sub-advisory fees received by Defendant Aeltus for Fund III, Fund VI and Fund VII, and received after the  filing of this Action, are excessive because:

a.      The nature and quality of the sub-advisory services provided to Fund III, Fund VI and Fund VII are identical to the nature and quality of the advisory services provided to Funds VIII, IX, X, XI and XII, which pay substantially lower sub-advisory fees for those identical services;

b.      Aeltus' profitability under its advisory agreements with Fund III, Fund VI and Fund VII is greater than its profitability under its advisory agreements with Funds VIII, IX, X, XI and XII, since it performs identical services to all of those funds, but is paid greater advisory fees for Fund III, Fund VI and Fund VII;

c.      The comparative sub-advisory fee structures between Fund III, Fund VI and Fund VII on the one hand and Funds VIII, IX, X, XI and XII, on the other, demonstrate the excessiveness of the sub-advisory fees being paid to Aeltus by Fund III, Fund VI and Fund VII.

d.    The fallout benefits, i.e. indirect profits to Aeltus attributable in some way to the existence of the Funds, would be identical to the fallout benefits attributable to the existence of Funds VIII, IX, X, XI and XII.

e.    The Trustees have not functioned in either an independent or conscientious manner in their approval of all of the fees at issue herein.

59.    Those facts demonstrate that the investment sub-advisory fees for sub-advisory services to the Funds received by Defendant Aeltus, and to be received after the filing of this Complaint, are excessive.

60.    As the investment sub-advisor to the Funds, the Defendant Aeltus has a fiduciary duty to the Funds and their shareholders.

61.    By collecting excessive investment sub-advisory fees for sub-advisory services to the Funds, Defendant Aeltus breached its fiduciary duty to the Funds and their shareholders and violated Sec. 36(b) of the Investment Company Act.

62.    By continuing to collect excessive investment advisory fees for advisory services to the Funds after the filing of this Complaint, Defendant Aeltus continues to breach its fiduciary duty to the Funds and their shareholders and violate Sec. 36(b) of the Investment Company Act.

## **SEC 36(b) ALLEGATIONS**

63.    This action is brought by the Plaintiffs on behalf of the Funds, pursuant to Section 36(b) of the Investment Company Act, to recover excessive advisory and sub-advisory fees paid by the Funds to the Defendants, ING Investments and Aeltus, during the period commencing one year prior to the commencement of this action.

64.     In each instance, the charging of, and receiving of, excessive fees by the Defendants, from the Funds, constituted a breach by the Defendants of their fiduciary duty to the Funds under Sec. 36(b) of the Investment Company Act.

65.     As an action brought by the Plaintiffs on behalf of the Funds, pursuant to Rule 36(b) of the Investment Company Act, the Plaintiffs were not required to, and have not, made demand upon the Trustees of the Funds to bring this action on behalf of the Funds. *See, Daily Income, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831 (1984).

## COUNT I

### Against the Defendants ING Investments and Aeltus for Breach of Fiduciary Duty Under, and Violation of, Sec. 36(b) of the Investment Company Act

66.     The Plaintiffs repeat and reallege all of the preceding paragraphs in this Complaint.

67.     The Defendant ING Investments and Aeltus are liable to the Funds for breach of their fiduciary duties under, and violation of, Sec. 36(b) of the Investment Company Act.

68.     The Funds have been damaged by the breach by Defendants ING Investments and Aeltus of their fiduciary duties to the Funds and their shareholders under, and violation of, Sec. 36(b) of the Investment Company Act by the excessive amounts which the Defendants ING Investments and Aeltus received from the Funds as advisory and sub-advisory fees during the period commencing one year prior to the commencement of this Action.

WHEREFORE, Plaintiffs pray this Honorable Court to:

A.     Find the Defendants liable for breach of their fiduciary duties to the Funds and their shareholders and for violations of Sec. 36(b) of the Investment Company Act;

B.     Declare that the advisory and sub-advisory fees that have been and continue to be charged the Funds by the Defendants are excessive;

C.     Issue a permanent injunction, enjoining the Defendants from continuing to charge the advisory and sub-advisory fees which this Court finds to be excessive;

D.     Determine and award to the Funds the amount of the excessive advisory and sub-advisory fees that the Defendants have received from the Funds;

E.     Award the Plaintiffs their reasonable attorneys fees and costs; and

F.     Any other further relief which this Court finds just and proper.

Dated:   November 29, 2006

Submitted by the attorneys for the Plaintiffs,

Edward F. Haber BBO No. 215620
Michelle H. Blauner BBO No. 549049
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
(617) 439-3939

Of Counsel

Joseph Weiss
Weiss & Lurie
551 5th Avenue, Suite 1600
New York, NY 10176
(212) 682-3025

Fred T. Isquith
Gregory Mark Nespole
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4690

Marc I Gross
Pomerantz Haudek Block Grossman & Gross LLP
100 Park Avenue
New York, NY 10017
(212) 661-1100