UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Mordchai Krausz, on behalf of ING Principal Protection Fund VI, Wayne Soojian and Janet Delgaizo, on behalf of ING Principal Protection Fund VII, and the Henzel Family Foundation, on behalf of ING Principal Protection Fund III, <br><br> Plaintiffs, <br><br> v. <br><br> ING Investments, LLC and ING Investment Management Co., <br><br> Defendants, <br><br> and <br><br> ING Principal Protection Fund III, ING Principal Protection Fund VI and ING Principal Protection Fund VII, <br><br> Nominal Defendants. | No. 06-CV-12145-RGS |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND ENTRY OF ORDER AND FINAL JUDGMENT**

**I.    PRELIMINARY STATEMENT**

Plaintiffs Mordchai Krausz, Wayne Soojian, Janet Delgaizo and the Henzel Family Foundation ("Plaintiffs"), respectfully submit this memorandum of law in support of their Motion for Final Approval of the Settlement of this derivative action (the "Action"). In the Action, Plaintiffs claim that the Defendants ING Investments, LLC ("ING Investments") and ING Investment Management Co. ("ING Investment Management") (collectively, the "ING

Defendants") charge excessive advisory fees to the ING Principal Protection Fund III ("Fund III"), ING Principal Protection Fund VI ("Fund VI") and ING Principal Protection Fund VII ("Fund VII") (collectively, the "Funds").

On August 21, 2007, the parties executed a Stipulation and Agreement of Settlement (the "Stipulation" or the "Settlement"), that was preliminarily approved by the Court on August 22, 2007. The Settlement provides that the ING Defendants shall make an aggregate settlement payment in the amount of two million dollars ($2,000,000) (the "Settlement Payment") to the Funds.

Plaintiffs now move this Court, pursuant to Fed. R. Civ. P. 23.1(c), to grant final approval of the Settlement and to enter the proposed Order and Final Judgment ("Final Order"), attached to Plaintiffs' Motion as Exhibit 1. The Settlement represents an outstanding recovery for the Funds and satisfies all the criteria necessary for approval by the Court. As demonstrated herein, this recovery is more than 100% of the damages Plaintiffs' counsel believes would have been likely to be recovered at trial and avoids any delays, uncertainties, and expenses of further litigation. Furthermore, as discussed below, there have been no objections to the settlement.

For the reasons set forth herein, Plaintiffs' Motion for Final Approval of Settlement and Entry of Order and Final Judgment should be granted.

## II. THE HISTORY OF THE PREVIOUSLY LITIGATED AND SETTLED ING PRINCIPAL PROTECTION FUNDS DERIVATIVE LITIGATION

In order to understand this Action, and its prompt settlement, one needs to be apprised of the litigation history and settlement of the earlier filed derivative actions consolidated as ING Principal Protection Funds Derivative Litigation, No. 03-12198-JLT (D. Mass.) (the "First ING Funds Action").

The ING Principal Protection Funds are a series of twelve mutual funds created and managed by the ING Defendants, denoted ING Principal Protection Funds I, II, III, etc. When one of the series was created, its shares could only be purchased during a relatively short period of about three months (the "Offering Period"). Then that fund's five year "Guarantee Period" would commence. At the end of the "Guarantee Period" fund shareholders would be guaranteed the return of the principal amount of their investment. Thereafter, the fund would enter its "Index Plus Large Cap Period." Each of these funds were created and sold, *seriatum*, by the ING Defendants. The funds are clones of each other, with identical structures and identical investment objectives.

The First ING Funds Action was a derivative action brought in November, 2003 pursuant to Section 36(b) of the Investment Company Act of 1940 (the "Investment Company Act"), 15 U.S.C. §80a-35(b), and under Massachusetts law, on behalf of three ING Principal Protection Funds I, II and IV which, as described above, are "clones" of the Nominal Defendant Funds III, VI and VII in this Action. Plaintiffs in the First ING Funds Action were represented by the same attorneys – Shapiro Haber & Urmy LLP – as represent the Plaintiffs at bar.

Defendants in the First ING Funds Action were ING Investments, which acts as investment adviser to the ING Principal Protection Funds; ING Investment Management, which acts as investment sub-adviser to the ING Principal Protection Funds; ING Distributor Inc. ("ING Distributor"), which acts as distributor for the ING Principal Protection Funds; and trustees of the ING Funds (the "Trustee Defendants").

Generally, in the First ING Funds Action, plaintiffs alleged that (a) Defendants ING Investments and ING Investment Management violated Section 36(b) of the Investment Company Act of 1940, as amended, 15 U.S.C. §§ 80a-1 et seq. (the "ICA") by charging

3

excessive advisory fees to the Funds, (b) Defendant ING Distributor violated Rule 12b-1 of the ICA by charging excessive distribution fees to the Funds, and (c) the Trustee Defendants breached their fiduciary duties to the Funds by approving the payment of those fees by the Funds to the ING Defendants.

The Defendants moved to dismiss the First ING Funds Action. The Court granted Defendants' motion to dismiss Plaintiffs' claims against ING Distributor and the Trustee Defendants but denied Defendants' motion to dismiss Plaintiffs' claims against ING Investments and ING Investment Management, sustaining Plaintiffs' complaint for alleged violations of section 36(b) of the ICA, which was based on allegations that the advisory and sub-advisory fees charged to the Funds were excessive. *ING Principal Protection Funds Deriv. Litig.,* 369 F.Supp.2d 163 (D. Mass. 2005).

The core issue remaining in the case was whether the fees charged by the ING Defendants to the Funds for advisory and sub-advisory services were reasonable or excessive. The factual gravamen of the excessive fees claim was the fact that the ING Defendants charged Funds I, II and IV higher advisory fees than they charged Funds VIII - XII for identical services. In *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir.1982), the Second Circuit set forth a standard that has since been widely cited by other courts in addressing claims under Section 36(b) of the ICA. According to *Gartenberg*, an investment adviser or manager may be liable for a breach of its fiduciary duty under § 36(b) if it charged a fee "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Id.* at 928. The *Gartenberg* court proposed six factors typically to be considered, including (1) the nature and quality of services provided to fund shareholders; (2) the profitability of the fund to the adviser-manager; (3) fall-

4

out benefits; (4) economies of scale; (5) comparative fee structures; and (6) the independence and conscientiousness of the trustees. *See Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir.1989) (citing *Gartenberg*, 694 F.2d at 929-30). *See also ING Principal Protection Funds Deriv. Litig.*, 369 F.Supp.2d at 168.[1]

Following the Court's ruling on Defendants' motion to dismiss, Plaintiffs continued to actively litigate the First ING Funds Action and engaged in extensive discovery and analysis of Section 36(b) claim under each of the *Gartenberg* factors. Plaintiffs' counsel reviewed hundreds of thousands of pages of documents produced by Defendants. They took depositions of Defendant ING Investments and of seven of the Funds' Trustees. Furthermore, Plaintiffs' Counsel also retained experts to investigate the facts of the case and develop opinions on liability, in particular with respect to each of the *Gartenberg* factors.

As the period for engaging in fact discovery neared completion, the parties engaged in settlement negotiations, which ultimately resulted in a Stipulation of Settlement.

In summary, the settlement of the First ING Funds Action provided as follows:

1. Payment by the Defendants to the three Nominal Defendant ING Principal Protection Funds I, II and IV a total of one million five hundred thousand dollars ($1,500,000);

2. Reductions in fees to be charged the Nominal Defendant funds during their Index Plus Large Cap Period, in the future, from 60 basis points to 45 basis points, which reductions were estimated to have a then present value of seven million, seven hundred fifty thousand dollars ($7,750,000); and

---

[1] Although the First Circuit has not expressly adopted the so-called *Gartenberg* factors nor has it established a specific standard for proving § 36(b) claims, *see Dumond v. Massachusetts Financial Services Co.,* 2006 WL 149038, *1 (D. Mass. Jan. 19, 2006); *Wicks v. Putnam Investment Management, LLC*, 2005 WL 705360, *4 (D. Mass. Mar. 28, 2005), *Gartenberg* has been widely cited by courts in this District and elsewhere in addressing Section 36(b) claims. *Id.*; *see also ING Principal Protection Funds Deriv. Litig.*, 369 F.Supp.2d at 168; *Krantz v. Fidelity Management & Research Co.*, 98 F.Supp.2d 150, 158 (D. Mass. 2000).

3.      Payment by the Defendants to Plaintiffs' counsel of two million, two hundred seventy five thousand dollars ($2,275,000) for their attorneys' fees and expenses in prosecuting the First ING Funds Action.

The Court, per Judge Tauro, granted final approval of the Settlement of the First ING Funds Action on July 19, 2006, and awarded Plaintiffs' Counsel the above-referenced attorneys' fees and expenses, which represented about 24% of the value of the recovery for the Funds.

### III.    THE HISTORY OF THE INSTANT ACTION

This Action was filed on November 29, 2006 on behalf of Nominal Defendants ING Principal Protection Funds III, VI and VII.[2] As previously noted, plaintiffs at bar are represented by Shapiro Haber & Urmy LLP, which also represented the plaintiffs in the First ING Funds Action. Following the guidance provided by the Court's decision in *ING Principal Protection Funds Deriv. Litig.,* 369 F.Supp.2d 163 (D. Mass. 2005), the complaint in this Action brought only Section 36(b) claims against ING Investments and ING Investment Management Co. for charging the Funds excessive advisory and sub-advisory fees. The factual gravamen of the excessive fees claim was the fact that the ING Defendants charged Funds III, VI and VII higher advisory fees than they charged Funds VIII - XII for identical services.

Promptly after the filing of this Action, counsel for the parties began exploring settlement. This, of course, made perfect sense in light of the history of the First ING Funds Action, including that:

1.      The sufficiency of the Complaint in this Action, as limited to the Section 36(b) claim, had been established;

---

[2] When this Action was filed, Plaintiffs' counsel denoted it, pursuant to Local Rule 40.1(G), as related to the First ING Funds Action, and it was accordingly assigned to Judge Tauro. Thereafter it was reassigned to Judge Young. After Judge Young recused himself, it was reassigned to Judge Stearns.

6

2.	The facts, which were equally applicable to the advisory fees charged to the Nominal Defendants Principal Protection Funds III, VI and VII here, as they were to the earlier Nominal Defendant Funds I, II and IV, had been extensively discovered; and

3.	The parties had "gotten to yes" on a settlement of the same claims on behalf of virtually identical funds.

The result of those negotiations is the settlement for which the parties seek this Court's approval. The settlement provides for a payment by the Defendants ING Investments and ING Investment Co. of a total of two million dollars ($2,000,000) to the three Nominal Defendant Funds, allocated in proportion to their asset values, as follows:

| | | |
|---|---|---|
| Fund III – | 28.5% = | $570,000 |
| Fund VI – | 46.9% = | $938,000 |
| Fund VII – | 24.6% = | $492,000 |
| | 100.0% = | $2,000,000[3] |

As demonstrated below, at pages 12 – 13, this is an outstanding recovery for these funds, as it represents more than Plaintiffs' Counsel believes would have been the most likely recovery at trial.

In addition, as previously noted, the settlement of the First ING Funds Action provided, *inter alia*, that the Defendants would reduce the combined advisory and sub-advisory fees charged to funds I, II and IV during the Index Plus Large Cap Period (as that term is defined in the prospectuses for the funds) from .60% of the average daily net asset value of each of the

---

[3] The settlement provides that Plaintiffs' Counsel will petition this Court for an award of attorneys fees and expenses to be paid out of that recovery. In the Notice of Hearing of Proposed Settlement, distributed to shareholders of the Funds pursuant to this Court's Preliminary Approval Order, the Funds' shareholders were advised that Plaintiffs' Counsel would seek a fee award not in excess of 30% of the recovery. As reflected in Plaintiffs' Application for an Award of Attorneys' Fees and Expenses, filed herewith, Plaintiffs' Counsel seek a fee award of 24% of the recovery. No objections have been filed to either the settlement or the requested fee award.

funds to .45% of the average daily net asset value of each of the funds and will not charge to any of the funds a combined advisory and sub-advisory fee greater than .45% of the average daily net asset value of that fund for a period of ten years from the Index Plus Large Cap Period Commencement Date for that fund.[4]

Ordinarily, Plaintiffs' Counsel would have demanded, and obtained, the same fee reductions for the Index Plus Large Cap Period for Principal Protection Funds III, VI and VII, in the settlement of this Action.  But, Plaintiffs' Counsel could not do so because, in connection with the settlement of the First ING Funds Action, the ING Defendants had already put in place that fee reduction for the Index Plus Large Cap Period for Principal Protection Funds III, VI and VII.  Specifically, when the ING Defendants effected those fee reductions for Principal Protection Funds I, II and IV, in connection with the settlement of the First ING Funds Action, they also reduced those fees for the other applicable Principal Protection Funds, including Funds III, VI and VII.  So, the Nominal Defendant Funds III, VI and VII here received that very substantial benefit, as a consequence of Plaintiffs' Counsel's efforts, but not directly as a result of the settlement of this Action.

The Stipulation of Settlement here does, however, protect that benefit to Funds III, VI and VII.  It provides, at ¶ 13, as follows:

> … if (i) a Settling Fund is merged with any other investment company that charges a combined advisory and subadvisory fee of more than .45% of the average daily net asset value and (ii) Defendants continue to provide advisory services to the combined entity, the total expense ratio of the combined entity shall not be greater than the total expense ratio of the Settling Fund (net of any expense waivers or reimbursements), and the nature of the services provided by Defendants to the combined entity shall be the same or greater than the services provided by Defendants to the Settling Fund.

---

[4] As previously observed, it was estimated that those fee reductions had a present value for those Funds – at the time of that settlement – of approximately $7,750,000.

## IV. THE PRELIMINARY APPROVAL ORDER AND NOTICE TO THE MEMBERS OF THE FUNDS' SHAREHOLDERS.

In its Preliminary Approval Order dated August 22, 2007, this Court granted preliminary approval of the Settlement and directed the ING Defendants to give notice of the Settlement to the Funds' shareholders of record as of September 6, 2007 ("Shareholders"), in the same manner as they arrange for communications to be addressed and mailed or e-mailed to such shareholders in the ordinary course of business. The Preliminary Order also approved the form of Notice to the Shareholders, which, among other things, described the nature of the litigation and the terms of the Settlement. The Notice also notified Shareholders of the date of the final approval hearing and of their right to object to the Settlement or to the Fee Application at that hearing.

As detailed in the Declaration of Mark Schofield Regarding Notice of Mailing of Notice of Settlement and Final Approval Hearing ("Schofield Declaration.") filed in this Action on November 27, 2007 (Docket No. 18 in this Action), on September 20, 2007, the ING Defendants caused the Notice to be mailed or e-mailed to 24,175 shareholders of record as of September 6, 2007. Schofield Decl., ¶6 and Exhibit 2. Out of those 24,175 Notices, **there has not been any objection to the Settlement**, demonstrating an overwhelmingly favorable response by the Shareholders.[5]

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

The determination of the fairness of a proposed settlement is left to the sound discretion of the trial court. *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir.1991); *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir.1972); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y.1993). When exercising its discretion, the Court will review the proposed

---

[5] Likewise, there has been no objection to the requested attorneys fee and expense award.

settlement in light of the strong judicial and public policies that favor settlements. *Id.*; *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y.1999).

There is a strong initial presumption that a proposed settlement negotiated during the course of litigation is "fair and reasonable." *Michael Milken & Assocs.*, 150 F.R.D. at 54. *See also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F.Supp. 209, 212 (S.D.N.Y.1992) ("A strong initial presumption of fairness attaches to the proposed settlement when it is shown to be the result of this type of a negotiating process and when the number of objectors is small."). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F.Supp. 277, 281 (S.D.N.Y.1993) (citation omitted). *See also In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986) ("[I]t is not a district judge's job to dictate the terms of a class settlement."). Among the factors traditionally considered in evaluating the fairness of a class action or derivative action settlement are the following: (i) whether the settlement negotiations were at arm's length; (ii) the extent of discovery the parties conducted; (iii) the amount of the settlement compared to the amount at issue in the case; (iv) plaintiffs' likelihood of succeeding on the merits and recovering damages on the claims; (v) class counsel's recommendations; and (vi) the nature and merit of any objections. *See M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-823 (D. Mass. 1987). *See also In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. 75, 93-94 (D. Mass. 2005)

In this case, an examination of the foregoing factors demonstrates that the Settlement is fair, reasonable and adequate to the members of the Class and should be approved by this Court.

### A. The Parties Entered into the Settlement as a Result of Arm's Length Negotiations.

In examining the fairness of a settlement, the Court may scrutinize the negotiations leading to the settlement. *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1980). In the absence of evidence to the contrary, however, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. 4 Alba Conte & Herbert Newberg, Newberg on Class Actions §11:41 (4th ed. 2002) ("Newberg on Class Actions").

Even without that presumption, however, it is clear the negotiations leading to this Settlement withstand close examination. As noted above, the parties vigorously and extensively litigated the First ING Funds Action before they reached a settlement of that action. Plaintiffs had briefed and argued the Defendants' motion to dismiss, conducted extensive discovery, including voluminous document production and many depositions, and consulted with several experts regarding the claims and defenses. Negotiations in this case were fully arm's-length and based upon the legal and factual background of the First ING Funds Action.

The Settlement was negotiated by counsel with extensive experience in derivative and class action litigation. Given the extensive history of the First ING Funds Action, all parties were in a good position to review their respective positions and determine the benefits of entering into a settlement. "When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement." *City P'ship Co. v. Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996); *United States v. Cannons Engineering Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989); *Berenson*, 671 F. Supp. 819, at 822 (where "a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair").

### B. The Settlement was Reached After the Extensive Discovery Conducted in the First ING Funds Action.

As previously detailed, Plaintiffs' Counsel had engaged in extensive discovery of the First ING Funds Action, including voluminous document review and numerous depositions. Plaintiffs' Counsel was fully versed on the facts in this case when the settlement of this Action was negotiated and consummated.

### C. The Settlement is not Only a Significant Recovery for the Funds, It Exceeds the Likely Recovery If the Action Had Gone to Trial.

To assess the reasonableness of a settlement seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir 1995) (citing Manual for Complex Litigation (Second) §30.44 (1985)).

The Settlement provides for a Settlement Payment to the Funds in the amount of two million dollars ($2,000,000). Significantly, the recovery is greater than what the Funds would likely have recovered, even if liability had been established.

The gravamen of Plaintiffs' claim is that the advisory and sub-advisory fees charged the Funds on their fixed income assets during their Guarantee Period (80 basis points per year) is excessive and unreasonable, because the Defendants charge other, identical, Principal Protection Funds (VIII-XII) fees of only 55 basis points per year on those assets during their Guarantee Period. Although Plaintiffs had alternative damage theories that could have produced at higher recovery, in Plaintiffs' Counsel's judgment, if liability had been established, the most likely recovery to the Funds for excessive fees during the period starting one year prior to the filing of

this Action[6] until the end of the Guarantee Period would have been approximately $1,750,000. Under the Settlement, the Funds will receive a recovery of $2 million, which is <u>more</u> than the most likely recovery at trial!  *See* Declaration of Edward F. Haber in Support of Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Expenses ("Haber Decl.), ¶¶3-4.

Obviously the Settlement amount far exceeds the range that courts traditionally have found to be fair and adequate under the law.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement with all defendants that comprised one sixth of the plaintiffs' potential recovery); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (settlement with all but one of the defendants of between 6% and 10% of damages); *cf. Officers for Justice v. Civil Serv. Comm'n. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) (recognizing that complete settlement for a fraction of total potential damages is acceptable, particularly where other relief is obtained by the class).  As the court explained in *Officers for Justice*, 688 F.2d at 615, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at 624 (citations omitted).

### D.     Plaintiff' Counsel Highly Recommends Approval of the Settlement.

Plaintiffs' Counsel have extensive experience in litigating derivative actions and class actions and have negotiated numerous other derivative action and class action settlements that have been approved by courts in this district and throughout the country.  Plaintiffs' Counsel reached the Settlement only after extensive analysis of the applicable law, review of the relevant facts after extensive discovery, and after consultation with experts.  Plaintiffs' Counsel have "a full understanding of the legal and factual issues surrounding this case," *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D.Tex. 1996), and are in an ideal position to evaluate the merits of their

---

[6] Section 36(b)(3) of the Investment Company Act of 1940, 15 U.S.C.A. § 80a-35(b)(3), limits damages for charging excessive fees to one year prior to the filing of the action.

case. Plaintiffs' Counsel agreed to the Settlement upon consideration of the strengths and weaknesses of the Plaintiffs' claims and the significant benefits to the Funds that would come with this Settlement. Given the risks that would come with further litigation in this case, including delay, the significant expenses of continued litigation, the uncertainties of this complex area of law and a probable appeal regardless of the trial's outcome, it is the informed conclusion of Plaintiffs' Counsel that this Settlement satisfies the requirements of Fed. R. Civ. P. 23.1 as one that is fair, reasonable and adequate to the Funds.

### E. The Class Faces Substantial Risks of Establishing Liability and Recovering Damages in Pursuing Further Litigation.

The ING Defendants have consistently denied any liability to the Funds. They have contended that the advisory fees and subadvisory fees they charge to the Funds are reasonable in light of the nature and quality of the services they provide, within the range of reasonably fees charged to similar funds, and reflect the unique nature of the principal protection investment product, which guarantees the return of the shareholder's principal at the end of the Guarantee Period.

In evaluating the appropriateness of settlement, Plaintiffs and their counsel have been mindful of substantial litigation risks and substantial differences of opinion between Plaintiffs and Defendants on Plaintiffs' ability to prove liability and resulting damages. Moreover, Defendants are represented by highly experienced and competent counsel.

In view of these potential obstacles to recovery against these Defendants, the Settlement represents a highly favorable recovery. Because the Settlement presents an opportunity to provide the Funds with meaningful relief for the wrongs alleged in the Complaint, this Settlement presents a compelling case for approval.

In addition, even if it is assumed that Plaintiffs successfully established liability, there are significant uncertainties as to both the fact and the quantum of damages. The issue of damages would have been hotly disputed, and would have been the subject of further "dispute between [the] experts [retained by the parties], a dispute whose outcome is impossible for [the Court] to predict." *In re RJR Nabisco, Inc. Sec. Litig.*, MDL No. 818, No. 88 Civ. 7905(MBM), 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992). As the Honorable John F. Keenan has observed:

> Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

*In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 744-45 (S.D.N.Y. 1985) (citations omitted).

### F.   The Reasonableness of the Settlement in Light of the Risks of Litigation.

In evaluating the Settlement, the Court is not required to engage in a trial on the merits to determine the prospects of success. *Michael Milken & Assocs.*, 150 F.R.D. at 54. The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, as Judge Friendly has explained, "in any case there is a range of reasonableness with respect to a settlement...." *Newman v. Stein*, 464 F.2d at 693. *See also In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D.Pa.2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses") (citation omitted). In fact, a settlement can be approved even when it amounts to only a small percentage of the recovery sought. *Michael Milken & Assocs.*, 150 F.R.D. at 64-65; *In re Gulf Oil Cities Serv. Tender Offer Litig.*, 142 F.R.D. at 590-91 (S.D.N.Y.1992).[7] In *In*

---

[7]*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cit. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a

15

*re Terra-Drill Partnerships Sec. Litig.*, 733 F.Supp. 1127, 1129 (S.D.Tex.1990), the court approved a settlement for $13.5 million, after a jury verdict had resulted in a judgment for more than $72 million for the class.

While issues of damages as well as liability might have resulted in less or no recovery after trial, even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir.1992) (citation omitted). *See also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y.1977) ("In evaluating the proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion."). As the Honorable Charles L. Brieant aptly recognized,

> [t]he dollar amount of the settlement by itself is not decisive in the fairness determination....Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F.Supp. 1099, 1103 (S.D.N.Y.1989) (citation omitted).

The Settlement provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1396, 1405 (E.D.N.Y.1985), *aff'd in part, rev'd in part on other grounds*, 818 F.2d 179 (2d Cir.1987). The Settlement is a reasonable result in both absolute terms and when balanced against the various risks facing plaintiff's case. *See Michael Milken & Assocs.*, 150 F.R.D. at 65.

---

single percent of the potential recovery."). Indeed, settlements providing no monetary damages have been approved. *E.g., Sunrise Toyota, Ltd. v. Toyota Motor Co., Ltd.*, No. 71 Civ. 1335(LFM), 1973 WL 778, at **4-5 (S.D.N.Y. Feb.20, 1973); *Kusner v. First Pa. Corp.*, 74 F.R.D. 606 (E.D.Pa.1977), aff'd,577 F.2d 726 (3d Cir.1978).

Moreover, even if a shareholder was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery. *In re Crazy Eddie Sec. Litig.*, 824 F.Supp. 320, 324 (E.D.N.Y.1993). As the court recognized in *Michael Milken & Assocs.*, "victory-even at the trial stage-is not a guarantee of ultimate success." 150 F.R.D. at 53.

### G.     The Complexity, Expense, and Duration of Further Litigation

As described above, these actions involve complex issues regarding the reasonableness of fees charged mutual funds.  Here, there is certainly no assurance that Plaintiffs would be successful after a trial on the merits.  The overwhelming majority of Section 36(b) claims which have been litigated have resulted in findings of no liability.  *See, e.g., Gartenberg v. Merrill Lynch Asset Management, Inc.,*  694 F.2d 923 (2d Cir.1982); *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404(2d Cir.1989); *Strougo, v.  Bea Associates,* 188 F.Supp.2d 373 (S.D.N.Y. 2002); *Kalish v.  Franklin Advisers, Inc.,* 742 F.Supp. 1222 (S.D.N.Y. 1990); *Schuyt v. Rowe Price Prime Reserve Fund, Inc.,*663 F.Supp. 962 (S.D.N.Y. 1987).  Indeed, since this Action was filed a number of Section 36(b) claims were dismissed on summary judgment rulings in favor of the fund advisors.  *See, e.g., Gallus v. Ameriprise Financial, Inc.*, 497 F.Supp.2d 974 (D. Minn. 2007); *Jones v. Harris Associates L.P.*, 2007 WL 627640 (N.D.Ill. Feb. 27, 2007).   Although Plaintiffs believe that the facts of this case support their position that the advisory fees are "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining," *Gartenberg*, 694 F.2d at 928, particularly in comparison to the fees charged by the ING Defendant for virtually identical investment products, a finding of liability was hardly assured.

17

Moreover, whatever the outcome at trial with respect to liability, there would inevitably have been post trial motions and an appeal, further prolonging the case for several years and thus reducing the value of any recovery. See, e.g., *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (judgment for plaintiffs reversed on appeal after 11 years of litigation); *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1 (1977) (reversing Second Circuit's award of damages after eight years of litigation); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973) (reversing treble damage judgment of $145,000,000 in action begun 12 years earlier).

Accordingly, the uncertainty of recovery and the expense and likely duration of the case through trial and appeals also support approval of the Settlement.

### H.    There Have Been No Objections to the Settlement.

An important factor to be considered in determining the fairness of the Settlement is the reaction by the Fund's shareholders. *Shlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir.1978). It has repeatedly been held that "one indication of the fairness of a settlement is the lack of or small number of objections." *Hammon v. Barry*, 752 F.Supp. 1087, 1093 (D.D.C.1990) (quoting 2 H. Newberg, Newberg on Class Actions § 11.47, at 463 (2d ed.1985)).

The highly favorable reaction of the Shareholders to the Settlement further supports approval of the Settlement. Pursuant to the Preliminary Approval Order, the ING Defendants caused the Notice to be mailed to all shareholders of record of the Funds as of September 6, 2007. The Notice informed the Shareholders, *inter alia*: (i) that the Action had been settled, subject to the Court's final approval; (ii) of the terms of the Settlement, including the $2 million payment by the Defendants to the Funds; (iii) that Plaintiffs' Counsel would seek an award of attorneys' fees not to exceed 30% of the $2 million recovery for the Funds and reimbursement of expenses not to exceed $20,000; and (iv) that the Shareholders could be heard as to any

objections at the final approval hearing, provided that any member wishing to object file a written notice of objection by November 5, 2007.

**Out of 24,175 Shareholders to whom the Notice was sent, as of the filing of this memorandum, there have been no objections to the Settlement (or the fee application)**. The absence of objections is, of course, an important factor in evaluating the fairness, reasonableness and adequacy of the Settlement. *See, e.g., Berenson*, 671 F. Supp. at 824.

## VI.   CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion for Final Approval of Settlement and Entry of Order and Final Judgment should be granted.

Dated: December 5, 2007                             Respectfully submitted,

/s/ Edward F. Haber
Edward F. Haber BBO #215620
Michelle H. Blauner BBO # 549049
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone:  (617) 439-3939
Facsimile:  (617) 439-0134

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 5th, 2007.

/s/ Edward F. Haber
Edward F. Haber